NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANET SEALY,<br><br>        Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., <u>et al.</u>,<br><br>        Defendants. | Civil Action No.: 13-cv-7461 (CCC)<br><br><br>**OPINION** |

**CECCHI, District Judge.**

I.    <u>**INTRODUCTION**</u>

This matter comes before the Court upon the objections of Defendant Verizon Communications, Inc. ("Defendant" or "Verizon")[1] to Magistrate Judge Mark Falk's Report and Recommendation on Plaintiff Janet Sealy's motion to remand this case to state court [ECF No. 13]. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court adopts Judge Falk's Report and Recommendation granting Plaintiff's motion to remand and denying Plaintiff's request for counsel fees.

---

[1] The terms "Defendant" or "Verizon" refer to all entities named in Plaintiff's Complaint, including Verizon Communications, Inc., Verizon New Jersey, Inc., Verizon Business Network Services, Inc., MCI International, Inc., Verizon and Verizon Business, Inc.

II.    **BACKGROUND**[2]

Plaintiff alleges that Defendant, her former employer, discriminated against her on the basis of age and disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD"). Specifically, Plaintiff alleges that Defendant's discriminatory statements discouraged her from exercising her rights under the collective bargaining agreement ("CBA") between Verizon and Local 111 of the International Brotherhood of Teamsters, which governed the terms of Plaintiff's employment. The CBA gave Plaintiff rights in the event of a lay-off to replace, or "bump," a more junior employee not being laid-off. Compl. ¶ 11.

Plaintiff was employed by Verizon and its predecessors for nearly 37 years until she was terminated in a lay-off on October 20, 2011. Compl. ¶¶ 6-7. Plaintiff was 65 years old at the time and working as an IT Operator in Piscataway, New Jersey. Compl. ¶¶ 8, 14. Plaintiff first learned that Defendant intended to close down her department, the "Lease Billing System" operation, in or about September 2010. Compl. ¶ 12. Plaintiff was the most senior and oldest of the nine employees affected by this announcement. Compl. ¶¶ 13-14. Grievances were filed pursuant to the CBA to challenge the resulting lay-off. Compl. ¶¶ 15.

Meanwhile, Plaintiff took medical/disability leave for spinal surgery beginning in October 2010 and lasting until October 2011. Compl. ¶¶ 17-19. The grievances challenging the lay-off were ultimately resolved by summer 2011. Compl. ¶ 16. The resolutions included an arbitral award holding that elimination of Plaintiff's job did not violate the CBA; however, the award did not address Plaintiff's seniority and bumping rights. Compl. ¶¶ 21-22. Of the nine

---

[2] The Court "must assume as true all factual allegations of the complaint" when considering a motion for remand. Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

employees affected by the lay-off, Plaintiff was the only employee who was not offered (i)
another job with Defendant or (ii) a payout in exchange for declining a right to another job with
Defendant.  Compl. ¶¶ 20.

Plaintiff's doctor certified her as able to return to work "with limitations" on October 20,
2011, but Defendant informed her that she would immediately be laid-off when she returned.
Compl. ¶¶ 24-25.  According to Plaintiff, Stephen Suto in Defendant's labor relations department
"acknowledged [Plaintiff's] bumping rights" but told her the only position available was a
"material handling position" that he knew she could not perform due to her recent surgery.
Compl. ¶ 27.  Plaintiff asked whether she could bump to positions of more junior, younger
employees who had previously worked on her platform but were assigned to billing instead of
being laid-off, noting that she had billing experience from early in her career.  Suto responded,
"Yes, but that was a long time ago," and refused to consider it.  Compl. ¶¶ 30-31.  Concluding
that Defendant was unwilling to make her a *bona fide* job offer due to her age and disability,
Plaintiff signed a "Reduction In Force – Option Form" declining her bumping rights and
accepting severance and pension pay instead.  Compl. ¶¶ 38, 40.

Plaintiff filed a Complaint in New Jersey Superior Court alleging age and disability
discrimination under the NJLAD on October 17, 2013.  See Notice of Removal [ECF No. 1].
Defendant removed the case to this Court, asserting that Plaintiff's NJLAD claim is completely
preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section
301"), because her claim is "inextricably intertwined with and require[s] an interpretation of the
CBA," specifically the seniority and bumping rights provisions of the CBA.  Id.

On May 19, 2014, Plaintiff moved to remand the case to New Jersey Superior Court [ECF No. 13], arguing that her claim does not require interpretation of the CBA; rather, it hinges on Defendant's "discriminatory conduct [that] discouraged [Plaintiff] from asserting her rights under the collective bargaining agreement and thereby caused [Plaintiff] to execute documents in which she waived such rights."  Pl.'s Br. 1.  Plaintiff also requested counsel fees associated with her efforts to remand, pursuant to 28 U.S.C. § 1447(c).  Defendant opposed the motion.

On August 1, 2014, Magistrate Judge Mark Falk issued a Report and Recommendation ("R&R") that Plaintiff's motion to remand be granted and that Plaintiff's request for counsel fees be denied [ECF No. 17].  Judge Falk concluded that Plaintiff's NJLAD claim is not completely preempted by Section 301 because it is not "substantially dependent upon analysis of the [CBA]."  R&R 7 (citing New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297, 305 (3d Cir. 2014)).  Rather, Judge Falk concluded, it is a straightforward discrimination claim that requires inquiry into what Defendants actually did and the reasons for their conduct, not into any alleged violation of the CBA.  Id.

Defendant objected to Judge Falk's Report and Recommendation on August 14, 2014 [ECF No. 18].  Defendant argued that Plaintiff's claim was "substantially dependent upon analysis of the [CBA]" for the following reasons:  (1) Plaintiff's claim attempts to establish that Defendants violated the CBA by preventing her from asserting her bumping rights because of age and disability; (2) Plaintiff's NJLAD claim would not exist independent of the CBA because she would not have been entitled to bump another employee absent the CBA; and (3) Suto's alleged discriminatory statements declined Plaintiff's requests to bump, and therefore the alleged

discrimination did not intervene *before* the issue of interpretation of the CBA could be reached. Def.'s Br. Objecting to R&R ("Def's Br.") 8-11.

## III.    LEGAL STANDARD

When a Magistrate Judge addresses motions that are considered dispositive, such as a motion to remand, the Magistrate Judge submits a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). The district court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions." 28 U.S.C. § 636(b)(1)(C); see also L. Civ. R. 72.1(c)(2). On dispositive motions, the district court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which a litigant has filed objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); see State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 231 (D.N.J. 2002). Unlike an Opinion and Order issued by a Magistrate Judge on a non-dispositive matter, a Report and Recommendation does not have force of law unless and until the district court enters an order accepting or rejecting it. United Steelworkers of Am. v. N.J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987).

## IV.    DISCUSSION

### A.    Motion to Remand

Magistrate Judge Falk correctly concluded and neither party disputes that Plaintiff's Complaint does not allege a federal claim on its face and "federal jurisdiction cannot be established by a federal defense or by challenging the merits of a claim." R&R 5 (citing Franchise Tax Bd. v. Contr. Laborers Vac. Tr. for S. Ca., 463 U.S. 1, 10 (1983)). Similarly,

neither party disputes that Section 301 would create removal jurisdiction for this Court to consider Plaintiff's Complaint under the doctrine of complete preemption, if and only if "the resolution of [Plaintiff's state cause of action] is 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" R&R 5-6 (citing Tishman, 760 F.3d at 305). Defendants objected to Judge Falk's conclusion that the resolution of Plaintiff's claim was not substantially dependent on analysis of the CBA for the purposes of complete preemption.

As Judge Falk correctly noted, a defendant's reference to a collective bargaining agreement in mounting a defense to a state law claim does not necessarily trigger preemption. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406 (1988). Even where analysis of the state law claim "involves attention to the same factual considerations as the contractual determination," this "parallelism" does not render the analysis of the state law claim dependent on the analysis of the collective bargaining agreement. Id. at 408.

For the doctrine of complete preemption to apply, the state law claim must turn on, and thus require construing, the meaning of the collective bargaining agreement. Tishman, 760 F.3d at 305-06. Thus, in Tishman, plaintiffs' state law claims alleging violations of the New Jersey Prevailing Wage Act ("PWA") were not preempted by Section 301, even though a collective bargaining agreement governed the terms of plaintiffs' employment, including their wages. Because analyzing the PWA claim only required "comparing the wages plaintiffs were paid to those provided in the PWA" and the workers' state law rights to prevailing wages "would exist even in the absence of any CBA," the PWA claims were not preempted. Id. at 306. Further, the Third Circuit noted, "Section 301 cannot be read broadly to preempt nonnegotiable rights

6

conferred on individual employees as a matter of state law." Id.  Similarly, in Lingle, the

Supreme Court held that the plaintiff's retaliatory discharge claim under state law was not

preempted by Section 301 because the "purely factual questions" whether plaintiff was

discharged and whether the employer's motive was to deter plaintiff from exercising her rights

did not require construing the CBA.  Lingle, 486 U.S. at 407.

Applying this law, Judge Falk concluded that Plaintiff presented a straightforward, state

law discrimination claim that did not require the Court to construe the CBA.  First, the NJLAD

creates a right to be free from discrimination in the workplace that exists independently of the

CBA.  Second, Judge Falk concluded that the Court would not be required to construe the CBA

to evaluate "what Defendants actually did and the reasons for their conduct," under the

NJLAD—namely, assessing (1) whether Plaintiff belongs to a protected class, (2) whether

Plaintiff was qualified for the position, (3) whether Plaintiff was subject to an adverse

employment action despite being qualified, and (4) whether the employer sought out individuals

with qualifications similar to Plaintiff's to fill the position.  R&R 7 (citing Foy v. Wakefern Food

Corp., No. 09-1683, 2010 WL 147925 (D.N.J. Jan. 7, 2010) and Church v. Sears Holding Corp.,

No. 12-4814, 2014 WL 2115020 (D.N.J. May 21, 2014)).  Third, Judge Falk noted that Plaintiff

is not attempting to allege a violation of the CBA itself, but rather she alleges that Defendant's

discriminatory conduct discouraged Plaintiff from asserting her rights under the CBA, causing

her to waive those rights, before the interpretation of the CBA could be reached.  R&R 8.

Defendant argues that Judge Falk erred in applying the law governing complete

preemption to the facts of this case.  The Court disagrees.  Defendant first argues that Tishman is

distinguishable from the instant case because here Plaintiff actually alleges violations of the

7

CBA; thus, the Court would have to evaluate whether, under the CBA, Plaintiff actually would have been able to bump any of the seven employees whom she thought she could have bumped. Def.'s Br. 9-10.  The gravamen of Plaintiff's Complaint, however, is not that Defendant violated the CBA, but that Defendant made discriminatory statements to Plaintiff, encouraging her to "quietly accept the lay-off and retire," in lieu of asserting her rights under the CBA.  Compl. ¶¶ 37-38.  Just because Plaintiff could allege that Defendant violated the bumping provisions of the CBA under the same set of facts does not render her parallel NJLAD claims preempted.  See Lingle, 486 U.S. at 408.

Further, Defendants cannot trigger Section 301 preemption simply on the basis that they may defend against Plaintiff's state law discrimination claim by invoking the CBA.  "[T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint . . . and that the plaintiff may, by eschewing claims based on federal law, choose to have the case heard in state court."  Caterpillar Inc. v. Williams, 482 U.S. 386, 398 (1987).  Therefore, the Defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law . . . ."  Id.

Plaintiff's NJLAD claim is independent of the CBA and any bumping provisions contained therein.  Def.'s Br. 10.  It is well established that "state law discrimination claims are derived independently from state law, and not from the obligations assumed by the parties under the labor agreement."  Kube v. New Penn Motor Exp., Inc., 865 F. Supp. 221, 229 (D.N.J. 1994) (citing Carrington v. RCA Global Commc'ns, Inc., 762 F. Supp. 632, 641-42 (D.N.J. 1991)); see

also <u>Coefield v. Jersey Central Power & Light Co.</u>, 532 F. Supp. 2d 685, 697 (D.N.J. 2007); <u>Ackerman v. Western Elec. Co., Inc.</u>, 860 F.2d 1514, 1517 (9th Cir. 1988); <u>Smolarek v. Chrysler Corp.</u>, 879 F.2d 1326, 1334 (6th Cir. 1989).

Defendant finally argues that because Suto's alleged discriminatory statements were made in response to Plaintiff's requests to bump, the alleged discrimination did not intervene *before* the issue of interpretation of the CBA could be reached. Def.'s Br. 8-11. The fact that Plaintiff discussed the possibility of bumping other employees with Suto does not affect the independence of Plaintiff's state law claim. Plaintiff claims that Suto made discriminatory statements about her age and disability that encouraged her to accept a lay-off. Plaintiff does not allege that Suto, and by extension, Defendant, violated the agreement. Thus, this objection to Judge Falk's Report and Recommendation, like Defendant's other objections, is unavailing.

### B.     Request for Counsel Fees

Judge Falk concluded in his Report and Recommendation that counsel fees associated with Plaintiff's efforts to remand are not warranted in this case because "the law governing preemption in the context of the LMRA is sufficiently complex such that the Court is unable to conclude that the removing party lacked an objectively reasonable basis seeking removal." R&R 9 (citing <u>Martin v. Franklin Capital Corp.</u>, 536 U.S. 132, 141 (2005)). Defendants did not object to this portion of Judge Falk's Reports and Recommendation. This Court agrees with Judge Falk's conclusion.

### V.     CONCLUSION

Having thoroughly reviewed Magistrate Judge Falk's Report and Recommendation and Defendant's objections thereto, this Court hereby adopts Magistrate Judge Falk's Report and

Recommendation in full, and thus grants Plaintiff's motion to remand and denies Plaintiff's request for attorney's fees.  An appropriate Order accompanies this Opinion.

Dated:  December 15, 2014

CLAIRE C. CECCHI, U.S.D.J.